IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

BRANDY MAI,                         )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )      CASE NO. CV418-277
                                    )
NINE LINE APPAREL, INC., d/b/a      )
Nine Line, a domestic profit       )
corporation,                        )
                                    )
        Defendant.                  )
                                    )
_____

### O R D E R

Before the Court is Defendant's Motion for Sanctions
(Doc. 17), Plaintiff's Motion for Sanctions against
Defendant (Doc. 22), Defendant's Motion to Seal (Doc. 14),
and Defendant's Motion to Withdraw its Motion to Seal (Doc.
18). For the following reasons, Defendant's Motion for
Sanctions (Doc. 17) is **GRANTED IN PART AND DENIED IN PART**
and Plaintiff's Motion for Sanctions Against Defendant
(Doc. 22) is **DENIED**. Additionally, Defendant's Motion to
Withdraw its Motion to Seal (Doc. 18) is **GRANTED**. As a
result, Defendant's Motion to Seal (Doc. 14) is **DISMISSED**.

### BACKGROUND

Plaintiff Brandy Mai filed this action on November 27,
2018 alleging that she, a female disabled veteran, was
subjected to discrimination based on her disability in
violation of the Americans with Disability Act as Amended

("ADAA"), retaliation in violation of the ADAA, and discrimination based on her gender in violation of Title VII of the Civil Rights Act of 1964. (Doc. 1.) Defendant answered the complaint on December 27, 2018 (Doc. 6) and the case proceeded to discovery.

On August 7, 2019, Defendant filed a Motion to Seal seeking an order permitting Defendant to file under seal a motion to enjoin extrajudicial statements. (Doc. 14 at 1.) In the Motion to Seal, Defendant stated that it was seeking the order so that it can "avoid further prejudicing the potential jury pool so that parties have an opportunity to fairly litigate this matter through the Court and not through public statements." (Id. at 2.) Defendant further stated that its contention in the motion to enjoin extrajudicial statements is that "Plaintiff is making public comments regarding this litigation for the express purpose of damaging the reputation of Defendant to the entire public, including any members of the public that would ultimately comprise a jury panel." (Id.) However, while the Motion to Seal was still pending, on August 23, 2019, Defendant filed its Motion for Sanctions (Doc. 17), contending that "[w]hile the Motion to Seal was pending but before the Court could rule, Plaintiff went to the media

and sat for a television interview which was broadcast on WSAV and is still posted on WSAV's website and Facebook page." (Doc. 17 at 1.) Defendant requests that this Court sanction Plaintiff's conduct.

Defendant argues that Plaintiff is attempting to litigate this action, not in the courtroom, but through "ginned-up media publicity designed to smear Nine Line and Capt. Merritt." (Id. at 2.) Specifically, Defendant states that Plaintiff's media campaign began after a failed mediation on June 24, 2019 and that, on July 24, 2019, a Nashville, Tennessee television station, Fox17, published an article on its website regarding the case. (Id.) The article describes the lawsuit and recites allegations from the complaint. (Doc. 17, Attach. 2.) Plaintiff shared the Fox17 article on her personal Facebook page with a comment stating "[t]his lawsuit began in 2016 and is still ongoing. It is just coming to light now with media coverage. Not included in the headline: the lawsuit also alleges disability discrimination, and I'm also a veteran." (Doc. 17, Attach. 3 at 1.) In one response to an individual commenting on her post, Plaintiff stated that no one knew about the case and that she "kept it quiet to protect the legal process so my PR background wouldn't get perceived as

slander." (Id. at 2.) Plaintiff stated in response to a different comment that "I kept it quiet to protect the legal process and keep it unbiased" and, in response to a comment asking why she did not tell the commenter about the existence of the case, "I had my reasons, mostly to protect the case and prevent biases. Plus, it takes a long time for it to work its way through the legal system. Had it settled throughout that process with a gag order, I didn't want to be in violation of that." (Id. at 3.) After this first article and Facebook sharing post, Defendant filed its Motion to Seal on August 7, 2019.

Defendant goes on to state that, on August 19, 2019, Savannah television station WSAV aired an interview with Plaintiff during which she discussed this action. (Doc. 17 at 3.) The interview and an accompanying article have been published by WSAV to its website and Facebook pages. (Id.; Doc. 17, Attach. 4 (WSAV's website); Doc. 17, Attach. 5 (WSAV's Facebook page).) In the article, Plaintiff states that she "was not a veteran that they helped," that Defendant "cited excessive phone use and lack of attendance as the reason" for her salary reduction and demotion, and stated that Merritt was the individual who informed her that she could not conduct interviews because they wanted a

4

man to do them and then "proceeded to yell at me, get in my face threaten me, said he just wanted to strangle me."[1] (Doc. 17, Attach. 4.) The post on WSAV's Facebook page received numerous comments, seemingly both in support of and in opposition to Plaintiff's position, and at the time the page was saved, the post had 452 comments and 98 shares. (Doc. 17, Attach. 5.)

Plaintiff also shared this interview and article on her own Facebook page with the caption of her post reading "Discrimination. Assault. Gag order motions. News interviews." (Doc. 17, Attach. 6.) Plaintiff's Facebook post, at the time Defendant saved the post, had 57 comments and 6 shares. (Id.) In response to a comment telling Plaintiff not to read the comments on the original post, Plaintiff replied "I'm a marketing and PR guru. Of course I'm reading them." (Id. at 2.) In another comment, an individual states that "Your story needs to be heard. If they weren't afraid of what will be found out, they

---

[1] The Court notes here that Plaintiff's complaint alleges that Tyler Anthony informed her that "Nine Line didn't want her conducting interviews at the event because she 'wasn't a guy'" and that, when she went to a secondary site at the event, "Mr. Anthony followed her, and began yelling in her face that he wanted to 'punch' her and 'strangle' her." (Doc. 1 at 4.) However, it appears that Tyler Merritt is the Chief Executive Officer of Defendant Nine Line. The Court assumes that Plaintiff's complaint simply misnames

wouldn't be trying to silence you." (Id.) In response, Plaintiff stated "I've waited in silence for years and haven't said a word, and I've only shared news articles that are public information." (Id.) Defendant also contends that Plaintiff has previously employed a similar tactic of exerting extrajudicial pressure on court proceedings in a child custody action that was before Judge Morse on the Chatham County Superior Court. (Id.) Defendant states that Plaintiff wrote an opinion piece published in Connect Savannah expressing her frustrations with Judge Morse and supporting an opposing candidate for the judicial seat. (Id.; Doc. 17, Attach. 7.)

Defendant claims that the timing of the media attention is not accidental and follows a failed mediation and now a "pay me or else" type of strategy is being employed. (Doc. 17 at 4.) Defendant argues that this conduct should be sanctioned as Plaintiff is seeking to taint a potential jury pool and that the Court has inherent authority to sanction such conduct. Defendant requests complete dismissal of Plaintiff's case. (Doc. 17 at 10.) Plaintiff has responded in opposition to Defendant's motion for sanctions. (Doc. 19.)

---

Mr. Merritt.

**LEGAL STANDARD**

The Eleventh Circuit has recognized that " '[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.' " Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1320 (11th Cir. 2002) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 501 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)). "This power 'must be exercised with restraint and discretion' and used 'to fashion an appropriate sanction for conduct which abuses the judicial process.' " Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting Chambers, 501 U.S. at 44-45, 111 S. Ct. at 2132-33). "A court may exercise this power to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. (internal citations and quotation marks omitted).

The key element to unlocking the court's inherent ability to sanction is a finding of bad faith. Id. "The inherent-powers standard is a subjective bad-faith standard." Id. Examples of conduct rising to the level of

bad faith include knowingly or recklessly making a frivolous argument, arguing a meritorious claim simply to harass an opponent, delaying or disrupting the litigation, and hampering the enforcement of a court order. Thomas, 293 F.3d at 1320 (quoting Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)). In addition, the Court's imposition of any sanction must comport with due process by providing the individual subject to possible sanction with proper notice and an opportunity to be heard. Id. at 1320-21; In re Mroz, 65 F.3d 1567, 1575-76 (11th Cir. 1995). Notice can come from the party seeking sanctions, from the court, or from both, and the accused must be given an opportunity to respond to the invocation of such sanctions and to justify his actions. In re Mroz, 65 F.3d at 1575-76. "In assessing whether a party should be sanctioned, a court examines the wrongdoing in the context of the case, including the culpability of other parties." Purchasing Power, 851 F.3d at 1225.

## ANALYSIS

I. DEFENDANT'S MOTION FOR SANCTIONS

Citing to the court's inherent power to sanction parties, Defendant requests that this Court sanction Plaintiff for her extrajudicial conduct, namely giving

8

interviews about the case and further publicizing those articles and interviews on her personal Facebook page. (Doc. 17.) Defendant also cites to the Local Rules of this district to contend that the media publicity created in this case by Plaintiff interferes with the right to a fair trial and has prejudiced the due administration of justice. (Id. at 6.) Defendant contends that Plaintiff's extrajudicial conduct is a "pay me or else" tactic because the media attention began after a failed mediation in June 2019.

Plaintiff has responded in opposition to the motion for sanctions and argues a number of reasons why Defendant's motion should be denied. First, Plaintiff argues that Local Rule 11.2 governs the conduct of attorneys, not the parties themselves, and Defendant has not presented any argument that Plaintiff's counsel has committed any violations. (Doc. 19 at 4-5.) In regards to a finding of bad faith, Plaintiff maintains that Defendant has not presented any evidence of bad faith, or Plaintiff's intent, and cannot show that "Plaintiff's exercise of her First Amendment rights somehow disrupted litigation, or violated any court order." (Id. at 7.) Further, Plaintiff contends that Defendant cannot argue that Plaintiff gave

her interview in an attempt to push a settlement demand because no offer was "on the table" at the time of the interview. (Id.) Finally, Plaintiff argues that her First Amendment rights cannot be curtailed in favor of Defendant's business interests and that Plaintiff has a right to discuss her public lawsuit. (Id. at 8-11.)

Despite Plaintiff's repeated assertions that that there are no legal grounds to sanction Plaintiff for her conduct, it is readily apparent that this Court may exercise its inherent authority to sanction a party who has acted in bad faith. Purchasing Power, 851 F.3d at 1223. This inherent power may be invoked even if other procedural rules exist to sanction the same conduct. Mroz, 65 F.3d at 1575. Indeed, "[t]he inherent power to sanction is both broader and narrower than these other means of imposing sanctions: [W]hereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." Id. (internal citations and quotation marks omitted). The Court first addresses Local Rule 11.2 which governs the release of information by attorneys in civil cases. S.D. Ga. L.R. 11.2. Defendant points out that it has not argued that Plaintiff is bound by this local rule, rather, Defendant

cites to the rule to demonstrate that "the Court already recognizes that media can interfere with a fair trial." (Doc. 25 at 5.) The Court agrees. Local Rule 11.2 directs attorneys

> not to release or authorize the release of information or an opinion, which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent civil litigation with which he or his firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

This Court seeks to ensure that parties receive a fair trial and Local Rule 11.2 is one method of carrying out that goal. However, this Court may also use its inherent power to sanction litigants and their attorneys to ensure the same fairness.

This Court is persuaded that Plaintiff Brandy Mai has engaged in inappropriate extrajudicial conduct by giving interviews and further publicizing those articles and interviews on her Facebook page and that this conduct was done in bad faith. First, from a review of the news articles and the copies of Plaintiff's Facebook page, it is readily apparent that Plaintiff did not approach the media

11

or began actively circulating information about her case until after the mediation, which did not result in a settlement. For example, in her Facebook post sharing the news article from Fox17, Plaintiff responded to comments stating that "I kept it quiet to protect the legal process and keep it unbiased" and, in response to a comment asking why she did not tell the commenter about the case, "I had my reasons, mostly to protect the case and prevent biases. Plus, it takes a long time for it to work its way through the legal system. Had it settled throughout that process with a gag order, I didn't want to be in violation of that." (Doc. 17, Attach. 3 at 3.) Plaintiff's explanation to the comment of why she did not tell the commenter was that she wanted to "protect the case and prevent biases" and that, had it settled with a gag order, she would not want to violate the order. Plaintiff directly references the fact that the case has not settled and that, had it settled, she would not be discussing the action. Further, in Plaintiff's response to the motion for sanctions, Plaintiff has offered no explanation of why she was concerned about protecting the legal process and preventing biases earlier in the case but then, after the mediation

was unsuccessful but the case was still ongoing, no longer had such concerns and felt comfortable publicizing these articles.

The Court also takes note of Plaintiff's statement on her Facebook account in response to a comment on the WSAV article and interview that she shared that she is a "marketing and PR guru." (Doc. 17, Attach. 6 at 2.) In this Court's view, Plaintiff's acknowledgement that she is closely monitoring the reactions that her interview is garnering because she is a "marketing and PR guru" supports this Court's finding of bad faith. The timing of the media attention is enough to give pause to the Court but the addition of Plaintiff's acknowledgement that she was monitoring the media attention her interview receives because of her marketing and public relations expertise leads this Court to find that Plaintiff gave the interview and shared the article and interview on her Facebook page in an effort to apply public pressure on Defendant and influence the public's perception about the merits of this action.

Finally, the Court also finds the timing of Plaintiff's sharing of the WSAV article and interview on

her Facebook page supports a finding of bad faith. Plaintiff shared the WSAV article and interview on her Facebook page after Defendant filed a motion to seal in which Defendant stated that it sought the motion so that it may file "Defendant's Motion to Enjoin Extrajudicial Statements Regarding this Litigation." (Doc. 25 at 6.) In the Motion to Seal, Defendant stated that the Motion to Enjoin concerned Defendant's contention "that Plaintiff is making public comments regarding this litigation for the express purpose of damaging the reputation of Defendant to the entire public, including any members of the public that would ultimately comprise a jury panel." (Doc. 14 at 2.) While the Court agrees with Plaintiff that the Motion to Seal, and any referenced Motion to Enjoin Extrajudicial Statements, was not granted when Plaintiff shared the WSAV article, Plaintiff was aware that Defendant objected to such publication and was seeking to prevent Plaintiff from making public comments. The timing of Plaintiff's media interviews and distribution of those interviews and articles via her Facebook page demonstrates Plaintiff's intention to influence this action in her favor.

Defendant encourages this Court to dismiss Plaintiff's case as the proper sanction. (Doc. 17 at 9-10.) In the alternative, Defendant requests that this Court admonish Plaintiff "to make no further public statements about this case and remove the information she posted." (Doc. 25 at 7.) The Court will not dismiss Plaintiff's case. However, the Court does feel that a proper and warranted sanction on Plaintiff is the payment of the fees and expenses associated with the preparation and filing of Defendant's Motion for Sanctions and any related replies. Additionally, this Court believes that extrajudicial statements by parties or counsel that may prejudice these proceedings should be proscribed at this time.

"[T]he Supreme Court has recognized the Court's power to proscribe 'extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters.'" Adams v. Lab. Corp. of Am., No. 1:10-CV-3309-WSD, 2014 WL 7336697, at *3 (N.D. Ga. Dec. 22, 2014) (quoting Sheppard v. Maxwell, 384 U.S. 333, 361, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966)). "Indeed, '[a]lthough litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to

other interests that arise' in the context of both civil and criminal trials." United States v. Brown, 218 F.3d 415, 424 (5th Cir. 2000) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32 n.18, 104 S. Ct. 2199, 2207-08 n.18, 81 L. Ed. 2d 17 (1984)).

"The issue of the correct standard to apply to restrict out-of-court statements of participants has not been uniformly decided." United States v. Scrushy, No. CR-03-BE-0530-S, 2004 WL 848221, at *3 (N.D. Ala. Apr. 13, 2004). There is a circuit split on this issue and the Eleventh Circuit has not weighed in on the appropriate standard for evaluating restrictive orders imposed on trial participants. The News-Journal Corp. v. Foxman, 939 F.2d 1499, 1515 n.18 (11th Cir. 1991) (addressing the circuit split and, after noting that the trial court applied the reasonable likelihood standard, found that it need not address the different standards to resolve the case). The district court in Scrushy, however, found that the Fifth Circuit has endorsed the "substantial likelihood" standard. 2004 WL 848221, at *4 (citing Brown, 218 F.3d at 427). In Brown, the Fifth Circuit found that "[i]f the district court determines that there is a 'substantial likelihood' (or perhaps even

16

merely a 'reasonable likelihood,' a matter we do not reach)
that extrajudicial commentary by trial participants will
undermine a fair trial," then the court may impose a
restrictive order on the participants, "as long as the order
is also narrowly tailored and the least restrictive means
available." 218 F.3d at 428. The Scrushy court followed
Brown and also applied, without deciding which standard was
correct, the substantial likelihood standard. 2004 WL
848221, at *4.

As discussed above, the Court finds that the pre-trial
publicity and media attention garnered thus far is an
attempt by Plaintiff to exert her marketing and "PR"
knowledge to influence the potential jury pool and exert
settlement pressure on Defendant. Additionally, the media
attention did not begin until after an unsuccessful
mediation attempt. The Court sees no reason why such media
attention would be garnered at that time unless as an
attempt to influence the remainder of the proceedings. The
Court additionally notes that Plaintiff points out that
Defendant has a "marketing practice of seizing upon any
sensationalist new story to manipulate media coverage for
their business" and that "Defendant regularly appears on

17

local news shows to promote their opinions and business."[2]
(Doc. 19 at 3; 4.) It therefore appears to the Court that
both Plaintiff and Defendant are concerned about the other
exerting media coverage to influence the trial of this case.
The Court finds that such pre-trial publicity would present
a substantial likelihood of prejudicing a fair trial in this
case. Thus, as this case is progressing towards trial, the
Court finds that a limited instruction to refrain from
providing extrajudicial statements to the press for the
purposes of influencing the public perception of this case
and the subsequent trial is necessary at this time.

The Court also finds that an order restricting
extrajudicial commentary by trial participants is the least
restrictive means to promote a fair trial and curtail
extensive pre-trial publicity. See Foxman, 939 F.2d at 1512-
13 ("[T]he Supreme Court has suggested a restrictive order
limiting extrajudicial commentary of trial participants as
an alternative to a prior restraint on the media.") (citing
Sheppard, 384 U.S. at 361, 86 S. Ct. at 1521). Although
other less restrictive means to avoid the effects of pre-

---

[2] The Court assumes that Plaintiff means that a
representative of Defendant appears on local news shows
because no individual defendant has been named in this

trial publicity are available, such as extensive voir dire and focused jury instructions, the Court agrees with the Scrushy court that "the best approach to 'curing' the effects of pretrial publicity involves 'those remedial measures that will prevent the prejudice at its inception.'" 2004 WL 848221, at *6 (quoting Sheppard, 384 U.S. at 362-63).

Accordingly, no party or counsel for the parties shall give or authorize any extrajudicial statements or interviews relating to this case, which a reasonable person would expect to be disseminated by means of public communication if there is a substantial likelihood that such dissemination will interfere with a fair trial, except that the lawyer or party may quote from or refer without comment to public records of the Court in the case. Parties and counsel for parties must refrain from giving or authorizing any extrajudicial statement or interview to a media outlet or source that relates to this action and which is intended to influence public opinion regarding the merits of this case. This case should be tried in the courtroom, not in the media.

_____

action.

## II. PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT

Plaintiff has also filed a Motion for Sanctions contending that this Court should sanction Defendant for pursuing its own motion for sanctions because "the only purpose was to prejudice and bias the Court" by attempting to alarm the Court that Plaintiff may critique the judges in this case, that Plaintiff is prone to violating court orders, and that Plaintiff's motivations are improper. (Doc. 22 at 1.) Plaintiff also continues to argue that Defendant has failed to identify any legal basis for its motion. (Doc. 28 at 1-2.) Plaintiff seeks an order from the Court enjoining Defendant from filing future motions without first conferring with opposing counsel and also seeks reimbursement for the costs of responding to Defendant's motion and the costs of preparing Plaintiff's motion for sanctions. (Id. at 2.) For the following reasons, Plaintiff's motion (Doc. 22) is **DENIED**.

First, this Court dismisses Plaintiff's contention that there is no legal basis for sanctioning her conduct. Plaintiff continues to argue that Defendant cannot show why Plaintiff "should be held" to Local Rule 11.2. (Doc. 28 at 2.) However, as discussed above, this Court has the inherent authority to sanction a party who has acted in bad

faith. Purchasing Power, 851 F.3d at 1223. This inherent authority is not dependent on any other rule or statute but is vested with the Court by its very nature. Mroz, 65 F.3d at 1575.

Second, this Court does not find that Defendant acted in bad faith, a finding which is crucial to "unlocking" the court's inherent ability to sanction. Purchasing Power, 851 F.3d at 1223. Plaintiff contends that Defendant's intention in filing its motion for sanctions was solely to prejudice Plaintiff before this Court. The Court disagrees. Defendant filed its Motion to Seal on August 7, 2019 seeking an order permitting Defendant to file under seal a Motion to Enjoin Extrajudicial Statements. (Doc. 14 at 1.) In the Motion to Seal, Defendant stated that it wanted to file the Motion to Enjoin Extrajudicial Statements under seal so that it could "avoid further prejudicing the potential jury pool so that parties have an opportunity to fairly litigate this matter through the Court and not through public statements." (Id. at 2.) Defendant explained that it was intending to file the motion to enjoin extrajudicial statements because "Plaintiff is making public comments regarding this litigation for the express purpose of damaging the reputation of Defendant to the entire public, including any

21

members of the public that would ultimately comprise a jury panel." (Id.)

However, before this Court ruled on the Motion to Seal, on August 23, 2019, Defendant filed its Motion for Sanctions, contending that "[w]hile the Motion to Seal was pending but before the Court could rule, Plaintiff went to the media and sat for a television interview which was broadcast on WSAV and is still posted on WSAV's website and Facebook page." (Doc. 17 at 1.) It is on this basis, the past and continued communications to the media and on social media by Plaintiff, that the Defendant sought sanctions from this Court. The Court does not find that Defendant acted in bad faith in bringing this issue before the Court—in fact, Defendant sought to seal the issue so that it would not result in any prejudice. As the Court does not find that Defendant acted in bad faith in either bringing the motion or highlighting Plaintiff's extrajudicial conduct within the motion, Plaintiff's Motion for Sanctions (Doc. 22) is **DENIED.**

### CONCLUSION

Accordingly, Defendant's Motion for Sanctions (Doc. 17) is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion for Sanctions Against Defendant (Doc. 22) is **DENIED.**

Additionally, Defendant's Motion to Withdraw its Motion to Seal (Doc. 18) is **GRANTED**. As a result, Defendant's Motion to Seal (Doc. 14) is **DISMISSED**.

Defendant is **DIRECTED** to file a motion seeking the reasonable expenses incurred in making its Motion for Sanctions and any related replies **within thirty (30) days** of the date of this Order and include an itemized list of the time its counsel spent, the hourly rate sought, and any costs. Plaintiff may respond to the motion in accordance with the Federal Rules of Civil Procedure. The Court, however, encourages the parties to confer on the issue and, if possible, present a joint motion.

SO ORDERED this 10th day of October 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA